IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEVEN TARPLEY,                    *

   Plaintiff,                    *

v.                                *          Civil Action No. GLR-17-2961

J. MICHAEL ZEIGLER, et al.,       *

   Defendants.                   *
                                *****

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Defendants[1] J. Michael Zeigler, Frank B. Bishop, Jr., Jeffrey A. Nines, Joseph Cutter, Jr., Michael O'Haver,[2] Dayena Corcoran, William S. Bohrer, and Joshua Vanskiver's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Defendants' Motion") (ECF No. 29),[3] and Plaintiff Steven Tarpley's Motion for Preliminary Injunction (ECF No. 15), Motion for Joinder of Parties (ECF No. 32),[4] and Motion for Leave to Supplement Complaint and Joinder of Additional Parties ("Motion to Supplement") (ECF No. 35).[5] This action arises from a series of incidents

---

[1] For purposes of this Memorandum, "Defendants" only refers to the moving Defendants.

[2] The Court will direct the Clerk to correct the spelling of Defendant Michael O'Haver's name on the docket.

[3] Also pending before the Court is Defendants' Corrected Motion for Extension of Time. (ECF No. 19). For good cause shown, the Court will grant the Motion nunc pro tunc.

[4] Tarpley's Motion for Joinder will be denied as moot because the subjects of the Motion, David Sipes and Thomas Mellott, are already Defendants in the case and have been since the filing of the Amended Complaint. (<u>See</u> Am. Compl. at 1, ECF No. 5).

[5] In his unopposed Motion to Supplement, Tarpley seeks to add as a Defendant Sgt. William Thomas. (Mot. Suppl., ECF No. 35). Tarpley asserts he did not include Thomas in either the Complaint or the Amended Complaint because he feared retaliation from Thomas if he had done so. (<u>Id.</u> at 2). Tarpley does not allege substantially new facts in his

during Tarpley's sentence at the North Branch Correctional Institution ("NBCI") and the punishments he received related to them. The Motions are ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2018). For the reasons that follow, the Court will grant the Defendants' Motion. The Court will deny as moot Tarpley's Motion for Preliminary Injunction and his Motion for Joinder, and grant his Motion to Supplement.

## I.  BACKGROUND[6]

**A.  <u>February 6, 2016 Incident and Subsequent Discipline</u>**

On February 6, 2016, an NBCI prison officer, later identified as Defendant William L. Thomas, found a document in a dayroom of NBCI's Housing Unit 2 that celebrated the January 29, 2016 assaults on several NBCI correctional officers and encouraged continued assaults on officers. (Am. Compl. ¶ 15, ECF No. 5; <u>id.</u> Ex. 1 at 1, ECF No. 5-1; Suppl. At 3, ECF 35-1). The document also advised inmates that, if they needed help writing complaints about staff, they should see "Steve" in Cell 10. (Defs.' Mot. Dismiss Alter. Summ. J. [Defs.' Mot."] Ex. 2 ["Feb. 6, 2016 Incident Case File"] at 34–35, ECF No. 29-6). A subsequent search of Tarpley's property produced a drawing of multiple tombstones with "R.I.P." and staff members' job title numbers on them. (Am. Compl. ¶ 15). The

_____

proposed Supplement, merely naming a previously unnamed correctional officer. Tarpley's claims against Thomas are mostly the same as those against the other officers. (<u>Id.</u> at 4). The Motion is unopposed, and the Court perceives no prejudice against Defendants. Accordingly, the Court will grant the Motion.

[6] Unless otherwise noted, the facts outlined here are set forth in Tarpley's Amended Complaint and Supplement. (ECF Nos. 5, 35). To the extent the Court discusses facts that Tarpley does not allege in his Amended Complaint and Supplement, they are uncontroverted, and the Court views them in the light most favorable to Tarpley. The Court will address additional facts when discussing applicable law.

drawing also depicted a mushroom cloud with the words, "How do you spell relief?" and "The North Branch Redemption Project" written inside the cloud. (Feb. 6, 2016 Incident Case File at 14). Tarpley was charged with violating Rule 100 (prohibiting inmates from engaging in a disruptive act) and Rule 104 (prohibiting the use of intimidating, coercive, or threatening language). (Am. Compl. ¶ 15; Feb. 6, 2016 Incident Case File at 2).

On February 23, 2016, Defendant Hearing Officer David Sipes held a prison disciplinary hearing concerning the charges. (Am. Compl. ¶ 15). At the hearing, Tarpley pleaded not guilty. (Id.). Tarpley argued the infraction should be dismissed because the notice he asked his cellmate to put up in the dayroom did not cause a disturbance and because the drawing was "just art." (Feb. 6, 2016 Incident Case File at 10).

Sipes concluded that both the drawing found in Tarpley's cell and the letter Tarpley admitted writing that praised assaults on correctional officers were intimidating and found Tarpley guilty of violating Rule 104. (Am. Compl. ¶ 15; Feb. 6, 2016 Incident Case File at 11). Sipes found Tarpley not guilty of Rule 100 because the text on the "notice" did not encourage a disturbance; rather, the directive was to write letters and file ARPs. (Am. Compl. ¶ 15; Feb. 6, 2016 Incident Case File at 11). Sipes imposed sanctions of ninety days' segregation, revoked 200 good-conduct credits, and suspended Tarpley's visits for 150 days. (Am. Compl. ¶ 15; Feb. 6, 2016 Incident Case File at 11).

Tarpley appealed Sipes' decision to Warden Bishop, arguing that the decision violated Tarpley's procedural and substantive due process rights, that enforcement of the rule in this case was arbitrary. (Am. Compl. ¶ 16). On March 22, 2016, Bishop affirmed the guilty finding. (Id. Ex. 2 at 1, ECF No. 5-2).

**B.    May 21, 2017 Incident and Subsequent Discipline**

On May 21, 2017, Officer O'Haver stopped Tarpley on an NBCI walkway and searched an envelope Tarpley was carrying. (Am. Compl. ¶ 19). The envelope contained another inmate's trial transcripts. (Id.). Tarpley was providing legal assistance to his fellow inmate "free of charge," as permitted by Division of Corrections. (Id.). According to the 2015 NBCI Inmate Handbook, "it is the policy of the DPSCS not to interfere with, or in any way hamper an individual's access to the judicial process." (Id.). Still, O'Haver confiscated the transcript Tarpley was carrying and, after Tarpley asked for O'Haver's name, ordered Tarpley into a holding cell where he was strip-searched. (Id.).

O'Haver then issued Tarpley a Notice of Rule Violation, charging him with violating Rule 309 (prohibiting stealing or possessing the property of another person identified as stolen) and Rule 405 (prohibiting demonstration of disrespect or use of vulgar language). (Id.; Defs.' Mot. Ex. 5 ["May 21, 2017 Incident Case File"] at 1, ECF No. 29-10). Tarpley told O'Haver the transcript was not stolen; O'Haver said Tarpley should not have asked for his name. (Am. Compl. ¶ 19). Tarpley was distressed because he thought he could lose as many as 900 days of good-conduct credit. (Id.). Further, his confinement to segregation deprived him of "some very important recreation time" required to "stave off serious and protracted back trouble caused by the 'inactive lifestyle' forced upon him as a result of his incarceration at NBCI." (Id.).

Ahead of the hearing on those charges, Tarpley's unit manager tried to convince him to accept a guilty finding in exchange for five days' cell restriction and threatened that if Tarpley put up a fight he would lose all good-conduct credit. (Id. ¶ 19). On June 15,

2017, Hearing Officer Anthony Bryant presided over a hearing concerning O'Haver's Notice of Rule Violation, and Tarpley lost no good-conduct credits. (Id. ¶ 19).

## C. July 17 & July 19, 2017 Incidents and Subsequent Discipline

On July 17, 2017, an anonymous note was found hanging in the recreation hall for Housing Unit 3 calling for inmates to unite against Holly Pierce, a nurse at NBCI. (Defs.' Mot. Ex. 8 ["July 2017 Incident Case File"] at 2–3, ECF No. 29-13). The note referred to Pierce as an "evil minded power tripping bitch," a "disreputable slut," and a "malevolent slut," and accused her of prescribing unauthorized medications without regard to pre-existing conditions. (Id. at 3–4). The note encourages inmates to contact the Executive Director of the Maryland Board of Nursing to complain about her actions and to ask "Steve in cell B-1" "if you need help pushing that pen." (Id. at 4). Shift Commander Cutter's investigation included comparing the handwriting in the note found with known handwriting by Tarpley. (Cutter Decl. at 2, ECF No. 29-14).

On July 19, 2017, prison authorities summoned Tarpley via the public-address system from the South Yard of NBCI to the gate to be handcuffed. (Am. Compl. ¶¶ 20–21). Officers escorted Tarpley to a holding cell while they inventoried his property. (Id. ¶ 21). Cutter then charged Tarpley with violating Rule 100 (disruptive act), Rule 104 (use of intimidating, coercive, or threatening language), and Rule 405 (demonstrate or use vulgar language). (Id. ¶ 20; Cutter Decl. at 2). Tarpley states he never saw the documents that apparently formed the basis of the charges. (Id. ¶ 22). While other inmates who arrived after Tarpley received hearings and were released from segregation, Tarpley sat in disciplinary segregation for thirty-two days before receiving a hearing. (Id. ¶¶ 20, 22).

On August 22, 2017, Sipes presided over a hearing concerning the charges. (Am. Compl. ¶¶ 22). Tarpley argued that the charges should be dismissed due to Cutter's lack of personal knowledge of the allegations. (Id.). Sipes concluded that "rules No. 100 and 104 were not supported by the record." (Id.). When Tarpley denied being the author of the document upon which the disrespect charge was based, Sipes shook a copy of "some other paper," and described it as "documentation at the highest level," explaining that Zeigler emailed it to him for purposes of the hearing. (Id.). Sipes did not allow Tarpley to read the documents but insisted one was a letter that constituted a threat. (Id.). Sipes then stated that if Tarpley did not agree to an informal resolution and plead guilty to Rule 405 for disrespecting Holly Pierce, Sipes would convict him of the use of coercive, intimidating, or threatening language charge and revoke all of his good-conduct credit. (Id.). Tarpley accepted an informal resolution and received a thirty-day cell restriction; he was released from segregation the following day and lost no good-conduct credits. (Id.; Defs.' Mot. Ex. 10 ["Aug. 22, 2017 Hearing Records"] at 6, ECF No. 29-15).

**D.    August 23, 2017 Incident and Subsequent Discipline**

On August 23, 2017, Officer Joshua VanSkiver escorted Tarpley to cell 3-A-25 following "some sort of mass disturbance" requiring a security lockdown of the housing unit. (Am. Compl. ¶ 24). Tarpley entered the cell and sat down, but VanSkiver ordered Tarpley to stand up so that his handcuffs could be removed and an inmate worker could put Tarpley's property in the cell. (Id. ¶ 25). VanSkiver removed the chair from Tarpley's cell, telling him it was broken and "did not belong there anyway," and promised Tarpley

he would get another one to replace it. (Id.) VanSkiver knew Tarpley had back problems but did not replace Tarpley's chair. (Id.).

Four days later, when Tarpley reminded Vanskiver about the chair, Vanskiver said he forgot and asked Tarpley to keep reminding him. (Id. ¶ 26). Concluding Vanskiver did not intend to replace the chair, Tarpley drafted an Administrative Remedy Procedure ("ARP") complaint and placed it in his cell door for pick-up. (Id.). VanSkiver became irate and began "shrieking" that his name was "Officer VanSkiver, not Joshua VanSkiver." (Id.). According to VanSkiver, Tarpley yelled vulgarities and threatening statements at him. (VanSkiver Decl. at 2, ECF No. 29-18). Shortly thereafter, two officers escorted Tarpley to segregation. (Am. Compl. ¶ 26). VanSkiver then wrote a Notice of Infraction charging Tarpley with violating Rule 104 (intimidating, coercive, or threatening language) and Rule 312 (interfering with or resisting the performance of staff duties). (Defs. Mot. Ex. 19 [Aug. 26, 2017 Hearing Record"] at 4, ECF 29-19).

Tarpley requested Sipes recuse himself from hearing the charges regarding VanSkiver, based on the "threats" he made at the August 22, 2017 hearing, but Sipes denied the motion. (Am. Compl. ¶ 27). Sipes also denied Tarpley's request for a continuance. (Id.). At the hearing Tarpley argued in part that if he said, "fuck you, I will kill you if I want," it was not a threat. (Aug. 26, 2017 Hearing Record at 10). After reviewing the housing unit video and listening to testimony, Sipes found Tarpley guilty of the Rule 104 violation. (Id.). Sipes found Tarpley not guilty of the Rule 312 violation. (Id.).  As a penalty, Sipes imposed 270 days of segregation and revoked 120 days of good conduct credit. (Id. at 11).

According to Tarpley, Sipes "obfuscated the absence of the evidence" Tarpley requested by considering a later ARP rather than the one Tarpley wrote on the day of the VanSkiver incident. (Am. Compl. ¶ 27). Tarpley tried to appeal Sipes's decision, but Security Chief Bohrer said that the appeal had not been received. (Id.).

**E.    Lawsuit**

In his seven-count Amended Complaint, as supplemented, Tarpley alleges: "denial of due process, denial of adequate, timely, and effective remedy for wrongful conviction and deprivation of 200 good conduct credits" against Sipes and Thomas (Count I); denial of due process and "refusal of impartial hearing officer" against Sipes (Count II); "retaliation/harassment, denial of due process/willful knowing and malicious filing of false report; false disciplinary charges" against Cutter, O'Haver, Sipes, Mellott, and Thomas (Count III); "conspiracy to retaliate, retaliation, denial of due process, denial of timely, meaningful, and adequate appellate review" against VanSkiver, Cutter, Bohrer, Nines, and Bishop (Count IV); "failure to supervise, govern, and discipline custody staff at [NBCI]" against Mellott, Cutter, Bohrer, Nines, and Bishop (Count V); "failure to supervise, govern, and discipline the operation of the Department of Correction and its staff, denial of due process" against Zeigler and Corcoran (Count VI); "intentional infliction of emotional distress, denial of due process, Eighth Amend, cruel and unusual punishment" against VanSkiver, O'Haver, Cutter, Sipes, and Thomas (Count VII). (Am. Compl. at 16–17). Tarpley brings all of his federal constitutional claims under 42 U.S.C. § 1983 (2018). (Id. ¶ 1). Tarpley brings claims under the Maryland Declaration of Rights against Thomas.

(Pl.'s Mot. Suppl. 3–4, ECF No. 35). Tarpley seeks compensatory and punitive damages. (Am. Compl. at 17–20).

On July 26, 2018, Defendants filed their Motion to Dismiss or, in the alternative, for Summary Judgment. (ECF No. 29). To date, the Court has no record Tarpley filed an Opposition. On August 16, 2018, Tarpley filed a "Line," (ECF No. 31), asking whether his Motion for Exten[s]ion of Time to Obtain Discovery" had been received. That same day, he filed a Motion for Joinder of Parties, (ECF No. 32). On October 1, 2018, Tarpley filed a "Line Request," in part, asking whether the Court received a "Rule 56(d) motion mailed August 2, 2018." (ECF No. 34). On October 9, 2018, Tarpley filed a Motion for Leave to Supplement Complaint and Joinder of Additional Parties. (ECF No. 35). On October 22, 2018, Tarpley requested a case summary and informed the Court that he is no longer incarcerated. (ECF No. 36).

## II. DISCUSSION

### A. Motion for Preliminary Injunction

Tarpley's Motion for Preliminary Injunction will be denied as moot because he has been released from the custody of the Department of Public Safety and Correctional Services. (See Notice of Change of Address, ECF No. 33). "A preliminary injunction is an extraordinary remedy intended to protect the status quo and prevent irreparable harm during the pendency of a lawsuit." Di Biase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017) (citing Pashby v. Delia, 709 F.3d 307, 319 (4th Cir. 2013)). "The purpose of interim equitable relief is to protect the movant" from harm resulting from "the illegality" the movant "alleged in the complaint." Omega World Travel, Inc. v. Trans World Airlines,

111 F.3d 14, 16 (4th Cir. 1997). Where injunctive relief is requested in an inmate's complaint, events subsequent to the filing of the complaint, such as his release, can render the matter moot. See Slade v. Hampton Rds. Reg'l Jail, 407 F.3d 243, 248–49 (4th Cir. 2005) (pre-trial detainee's release moots his claim for injunctive relief).[7]

Because Tarpley has been released from prison, a preliminary injunction would no longer protect him from harm resulting from "the illegality" he alleged in his Amended Complaint. As a result, the Court will deny the Motion for Preliminary Injunction.

**B.** **Motion to Dismiss, or in the Alternative, for Summary Judgment**

**1.** **Conversion of Defendants' Motion**

Defendants' Motion is styled as a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment under Rule 56. Motions styled in this manner implicate the Court's discretion under Rule 12(d). See Kensington Vol. Fire Dep't., Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of

---

[7] For the same reasons, Tarpley's release also moots his other requests for injunctive or declaratory relief. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (transfer of prisoner moots his Eighth Amendment claims for injunctive and declaratory relief). For a declaratory judgment to issue, there must be a dispute which "calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 242 (1937); Ashcroft v. Mattis, 431 U.S. 171, 172 (1977). As Tarpley is no longer in prison, the Court cannot adjudicate a present right related to his status as a prisoner.

any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The U.S. Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise the issue that more discovery is needed, the non-movant must typically

file an affidavit or declaration, explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d).

Here, the Court concludes that both requirements for conversion are satisfied. Tarpley was on notice that the Court might resolve Defendants' Motion under Rule 56 because Defendants styled their Motion in the alternative for summary judgment and presented extensive extra-pleading material for the Court's consideration. See Moret, 381 F.Supp.2d at 464. In addition, the Clerk informed Tarpley about the Motion and the need to file an opposition (July 27, 2018 Letter, ECF No. 30). Tarpley filed a "Line" inquiring whether this Court received his Motion for an Extension of Time to obtain discovery pursuant to Fed.R.Civ.P. 56(d). (ECF No. 31). However, the Court has no record that any such motion was filed. Tarpley also did not file an opposition to Defendants' Motion. Tarpley's "Line" does not describe the evidence he expects to obtain through discovery. The Court, therefore, cannot determine if that evidence would create a genuine issue of material fact sufficient to defeat summary judgment. Because the Court will consider documents outside of Tarpley's Complaint in resolving Defendants' Motion, the Court will treat the Motion as one for summary judgment.

## 2. Standard of Review

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of

materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2). Supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence." Fed.R.Civ.P. 56(c)(4).

Following a properly supported motion for summary judgment, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the

nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

### 3.     Summary Judgment Analysis

In their Motion, Defendants argue Tarpley has failed to allege or prove a deprivation of any federal constitutional right or law that would entitle him to relief under § 1983. Defendants' Motion is unopposed, but as Tarpley clearly intended to oppose it, the Court will address each of the arguments in turn.[8]

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). To prevail on a § 1983 claim, a plaintiff must demonstrate a deprivation of rights guaranteed by the Constitution or laws of the United States and that the alleged deprivation was committed by a "person" acting under color of state law. 42 U.S.C. § 1983; West v. Atkins, 487 U.S.

---

[8] Defendants also argue they are entitled to qualified immunity. Public officials are "entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" D.C. v. Wesby 138 S.Ct. 577, 589 (2018) (citing Reichle v. Howards, 566 U.S. 658, 664 (2012)). The "answer to both [ ] questions must be in the affirmative in order for a plaintiff to defeat a . . . motion for summary judgment on qualified immunity grounds." Henry v. Purnell, 501 F.3d 374, 377 (4th Cir. 2007) (citing Batten v. Gomez, 324 F.3d 288, 293–94 (4th Cir. 2003)). Because the Court determines that Defendants did not violate any of Tarpley's constitutional rights, it does not reach Defendants' argument that they are entitled to qualified immunity.

42, 48 (1988) (first citing <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981); and then citing <u>Flagg Bros., Inc. v. Brooks</u>, 436 U.S. 149, 155 (1978)). "In analyzing a § 1983 claim, a court must first identify 'the specific constitutional right allegedly infringed.'" <u>Hamilton v. Mayor of Balt.</u>, 807 F.Supp.2d 331, 343 (D.Md. 2011) (citing <u>Albright</u>, 510 U.S. at 271).

###    a.    Due Process: Adjustment Hearings (Counts I–IV, VI–VII)

Defendants argue that Tarpley received the process he was due in the context of his prison disciplinary proceedings. The Court agrees.

In prison disciplinary proceedings where a prisoner faces the possible loss of good conduct credits, he is entitled to certain due process protections. <u>Wolff v. McDonnell</u>, 418 U.S. 539, 563–64 (1974). Procedural due process protections include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. <u>Id.</u> at 540, 564, 570–71. Prison inmates have "no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." <u>Marshall v. Odom</u>, 156 F.Supp.2d 525, 533 (D.Md. 2001) (quoting <u>Freeman v. Rideout</u>, 808 F.2d 949, 951 (2d Cir. 1986)).

In the prison context, "the adoption of procedural guidelines does not give rise to a liberty interest; thus, the failure to follow regulations does not, in and of itself, result in a violation of due process." <u>Kitchen v. Ickes</u>, 116 F.Supp.3d 613, 629 (D.Md. 2015) (citing <u>Culbert v. Young</u>, 834 F.2d 624, 628 (7th Cir. 1987)), <u>aff'd</u>, 644 F.App'x 243 (4th Cir. 2016); <u>see also</u> <u>Riccio v. County of Fairfax</u>, 907 F.2d 1459, 1466 (4th Cir. 1990) (noting "a state does not necessarily violate the Constitution every time it violates one of its rules").

"Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met." <u>Kitchen</u>, 116 F.Supp.3d at 629 n.6 (citing <u>Myers v. Kelvenhagen</u>, 97 F.3d 91, 94 (5th Cir. 1996)).

Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." <u>Superintendent, Mass. Corr. Inst. v. Hill</u>, 472 U.S. 445, 455 (1985).

With these standards in mind, the Court will analyze each of Tarpley's four disciplinary hearings.

### i.        February 6, 2016 Notice of Infraction

In terms of procedural due process, Tarpley received advance written notice of the charges against him, a hearing, and a written decision. <u>Wolff</u>, 418 U.S. at 540, 564, 570–71. Further, there is nothing in the decision issued by Sipes that indicates he was biased against Tarpley or that he was engaged in a conspiracy against Tarpley.

As for substantive due process, Sipes' decision was based on "some evidence." As the hearing officer present during the testimonies of the parties, Sipes found the reporting officer more credible than Tarpley and rejected Tarpley's characterization of his drawing as "just art." The notice Tarpley posted in the dayroom was not vague; it praised acts of violence committed against correctional officers, an institutional concern. Sipes's conclusion that Tarpley's drawing was intimidating, in violation of prison rules, was thus supported by "some evidence."

The Court concludes Defendants met the constitutional due process standards in this instance and are entitled to summary judgment on the claims related to this infraction.

### ii.     May 21, 2017 Notice of Infraction

Defendants contend there was no hearing on the merits of this Notice of Infraction because Tarpley accepted an "informal disposition" of the charges. (May 21, 2017 Incident Case File at 8). Tarpley contends he was found not guilty. (Am. Compl. ¶ 19). Regardless, Tarpley lost no good-conduct credits as a result of this Notice of Infraction. Where, as here, no loss of good-conduct credit resulted from the disciplinary proceedings, there is no liberty interest at stake and constitutional due process protections are not offended. Wolff, 418 U.S. at 563–64. The Court will, therefore, grant summary judgment to Defendants on the claims related to this Notice of Infraction.

### iii.     July 19, 2017 Notice of Infraction

 The delay in Tarpley's hearing for this infraction does not run afoul of federal due process protections, nor was there a lack of evidence to support the Notice of Infraction. Cutter explained the delay in Tarpley's adjustment hearing was due to the fact that the video-conferencing equipment was not operational between the time Tarpley was charged and the date of his hearing. (Cutter Decl. at 2). While the hearing did not happen as soon as Tarpley would have liked, a delay in the usual hearing schedule does not rise to the level of a constitutional due process violation. Kitchen, 116 F.Supp.3d at 629 n.6.

Tarpley's claim that the entire incident was fabricated is belied by the evidence. The note was in his handwriting and used familiar language encouraging inmates to come to him for assistance. His degrading references to Pierce, coupled with the globalized complaints concerning her alleged lack of professionalism, is enough evidence for correctional officials to conclude that the note was meant to be a threat to her safety. Further

prisoners like Tarpley have "no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest," <u>Marshall</u>, 156 F.Supp.2d at 533.

Defendants are entitled to summary judgment on the claims in connection with this Notice of Infraction.

### iv.     August 26, 2017 Notice of Infraction

Tarpley cites no law that states a failure to grant a continuance is a due process violation or that a repeat adjudicator, as Sipes was here, must recuse himself to satisfy due process. The Court does cannot conclude that Tarpley's allegation that Sipes "obfuscated the absence of the evidence" creates a genuine dispute of material fact concerning a due process violation. <u>Kitchen</u>, 116 F.Supp.3d at 629 n.6. Further, there was "some evidence" to support the guilty finding made by Sipes in this case: the statement "I will kill you if I want to" is a threat. Defendants are entitled to summary judgment on the due process claims in relation to this infraction.

To the extent Tarpley alleges a failure of Defendants to follow prison adjudicative procedures with respect to his cases, he fails to identify a genuine dispute of material fact. He was advised of the charges against him, participated in hearings, accepted an "informal resolution" or received a written decision, and had the opportunity to appeal, where applicable. He has not identified any violation of an NBCI rule that gives rise to a federal claim because the facts show constitutional minimal requirements have been met in this case. <u>Kitchen</u>, 116 F.Supp.3d at 629 n.6.

As a result, the Court will grant summary judgment to the Defendants and against Tarpley with respect to these due process-related claims.

### b. First Amendment: Speech and Retaliation (Counts III–IV)

"Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." Henson v. Graham, No. JKB-17-0886, 2018 WL 1123693, at *10 (D.Md. Feb. 28, 2018) (quoting ACLU of Md., Inc. v. Wicomico Cty., 999 F.2d 780, 785 (4th Cir. 1993)). Such a claim is grounded in the First Amendment. See Booker v. S.C. Dep't of Corr., 855 F.3d 533, 540 (4th Cir. 2017) ("[I]f an inmate exercises his First Amendment right when he files a prison grievance, retaliation against him for doing so is unconstitutional."), cert. denied, 138 S.Ct. 755 (2018). A prisoner does not have a constitutional entitlement to or liberty interest in accessing a grievance procedure, see Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994), but his First Amendment right is violated "when he is retaliated against for submitting a grievance pursuant to an existing grievance procedure." Booker, 855 F.3d at 541. Still, because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct,'" prisoner retaliation claims "must therefore be regarded with skepticism." Adams, 40 F.3d at 74.

To prove a claim of retaliation, a plaintiff must show: (1) "he engaged in protected First Amendment activity"; (2) "defendants took action that adversely affected him"; and (3) "a causal relationship between the protected activity and the defendant's conduct." Henson, 2018 WL 1123693, at *11 (citing Martin v. Duffy, 858 F.3d 239, 249 (4th Cir.

2017)). The showing of adversity is "essential." <u>ACLU of Md.</u>, 999 F.2d at 785. The inmate must show that the alleged act of retaliation had a chilling effect on his exercise of the right asserted. <u>Id.</u> at 785–86. The plaintiff must also demonstrate that the protected activity was the "'but for' cause of the adverse action alleged." <u>Henson</u>, 2018 WL 1123693, at *11 (quoting <u>Ridpath v. Bd. of Governors Marshall Univ.</u>, 447 F.3d 292, 318 (4th Cir. 2006)). "In the prison context, the plaintiff must establish that the prison authorities' retaliatory action did not advance the institution's legitimate goals of preserving internal order and discipline or that it was not narrowly tailored to achieve such goals." <u>Henson</u>, 2018 WL 1123693, at *11 (citing <u>Rizzo v. Dawson</u>, 778 F.2d 527, 532 (9th Cir. 1985)).

The constitutional rights of prisoners are limited, including First Amendment rights. <u>Shaw v. Murphy</u>, 532 U.S. 223, 229 (2001). In <u>Huff v. Mahon</u>, the Fourth Circuit quoted approvingly the district court's statement that, "[a]n inmate does not have a First Amendment right to direct disrespectful comments to a prison official, whether verbally or in writing, because the prison's legitimate penological interests in promoting order and discipline, and in controlling violence clearly necessitate the prohibition of such comments." 312 F.App'x. 530, 532 (4th Cir. 2009). <u>See also</u> <u>Lockett v. Suardini</u>, 526 F.3d 866, 874 (6th Cir. 2008) (concluding that an inmate's comment in a grievance, calling a prison employee a "foul and corrupted bitch," did not constitute protected speech); <u>Hale v. Scott</u>, 371 F.3d 917, 919 (7th Cir. 2004) (rejecting an inmate's free speech claim based on discipline for disrespect to a prison staff member because "[p]rison regulations that forbid inmates to behave insolently toward guards are constitutional").

Tarpley's various speech at issue in this case consisted of written threats and abuse, which are not protected First Amendment activity. He therefore cannot establish the first element of a retaliation claim. Further, he filed a subsequent ARP after the one lodged against Vanskiver so it does not appear his access to the prison grievance procedure was curtailed. Finally, Tarpley cannot show that the correctional officers' allegedly "retaliatory action did not advance the institution's legitimate goals of preserving internal order." Henson, 2018 WL 1123693, at *11. As a result, the Court will grant summary judgment to Defendants and against Tarpley on his retaliation claims.

### c.    Conspiracy (Count III)

To establish a civil conspiracy under § 1983, a plaintiff must present evidence that defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right. See Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). An essential element for a claim of conspiracy to deprive plaintiff of a constitutional right, is an agreement to do so among the alleged co-conspirators. See Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1006–07 (4th Cir. 1987). Without an agreement, the independent acts of two or more wrongdoers do not amount to a conspiracy. See Murdaugh Volkswagon v. First Nat'l Bank, 639 F.2d 1073, 1075–76 (4th Cir. 1981). A plaintiff must allege facts establishing that defendants shared a "unity of purpose or a common design" to injure him. Am. Tobacco Co. v. United States, 328 U.S. 781, 809–10 (1946).

Here, Tarpley has offered no evidence that Defendants acted in concert to deprive him of a constitutional right. The only shared purpose Defendants can be said to have had

is to enforce the disciplinary rules in place at NBCI, a legitimate and constitutional purpose. Further, Tarpley has not proven a violation of his constitutional rights. Tarpley has therefore failed to establish a genuine dispute of material facts regarding his conspiracy claim. As a result, the Court will grant summary judgment to Defendants as to this claim.

### d. Failure to Supervise (Counts VI and VII)

There is no respondeat superior liability under 42 U.S.C. § 1983. Love–Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004). Thus, "for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.'" Garraghty v. Com. of Va., Dep't of Corr., 52 F.3d 1274, 1280 (4th Cir. 1995) (quoting Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985)). It is well-settled, however, that "supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001) (quoting Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994)).[9]

---

[9] To establish supervisory liability, a plaintiff must demonstrate:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices [ ]; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. (quoting Shaw, 13 F.3d at 799).

Here, Tarpley has alleged certain Defendants failed to supervise staff at NBCI. For those Defendants to be liable, however, their subordinates would have had to inflict a constitutional injury on Tarpley. As noted above, Tarpley's constitutional rights have not been violated in this case. His claims for failure to supervise must therefore fail. As a result, the Court will grant summary judgment to Defendants and against Tarpley on these counts.

In sum, the Court will grant Defendants' Motion. The Court notes that the Memorandum in Support of Defendants' Motion did not address all of the claims in Tarpley's Amended Complaint, notably his claims under the Eighth Amendment and for intentional infliction of emotional distress in Count VII.

### III. CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 29), construed as a motion for summary judgment, will be granted. Defendants' Corrected Motion for Extension of Time (ECF No. 19) will be granted nunc pro tunc. Tarpley's Motion for Preliminary Injunction (ECF No. 15) and Motion for Joinder of Parties (ECF No. 32) will be denied as moot. Tarpley's Motion for Leave to Supplement Complaint and Joinder of Additional Parties (ECF No. 35) will be granted. A separate Order follows.

Entered this 29th day of March, 2019.

_____/s/_____
George L. Russell III
United States District Judge
